**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BANK OF AMERICA, N.A.**, a national banking association,<br>    *Plaintiff,*<br>v.<br>**BAAS CORPORATION**, a Delaware corporation; and **FINLINK, INC.**, a Delaware corporation,<br>    *Defendants.* | Case Number: 25-cv-_____<br><br>**VERIFIED COMPLAINT**<br><br>(Document Filed Electronically) |

Plaintiff, Bank of America, N.A., by and through its attorneys, Chapman and Cutler LLP, by way of Verified Complaint against defendants BAAS Corporation and FinLink, Inc., states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and § 1391(c)(2) in that each of the defendants has contractually agreed to personal jurisdiction and venue in the Federal Courts of the State of New York, City of New York, Borough of Manhattan pursuant to the governing Loan Agreement (defined herein) entered into by plaintiff Bank of America, N.A., as a commercial lender, and defendant BAAS Corporation, as borrower, which provides in section 6.21 (Venue and Jurisdiction) that each of the defendants "agrees that any action or suit against [plaintiff] arising out of or relating to any [Loan Document (defined herein)] shall be filed in federal court . . . located in . . . the city of New York, borough of Manhattan."

## THE PARTIES

3. Bank of America, N.A. (the "***Bank***") is a national banking association chartered under the laws of the United States of America with its main office and principal place of business

located in Charlotte, North Carolina as designated in its Articles of Association, and as such, it is a citizen of the State of North Carolina for diversity jurisdiction purposes by virtue of 28 U.S.C. § 1348. The Bank also maintains a place of business in the City of New York, Borough of Manhattan.

4.   Upon information and belief, defendant BAAS Corporation ("**BAAS**" or "**Borrower**") is a Delaware corporation that maintains an office and place of business in Bothell, Washington. BAAS has contractually agreed to personal jurisdiction in this action.

5.   Upon information and belief, defendant FinLink, Inc. ("**FinLink**" and together with BAAS, the "**Obligors**") is a Delaware corporation that maintains an office and place of business in Bothell, Washington. BAAS has contractually agreed to personal jurisdiction in this action.

## NATURE OF THE ACTION

6.   This is an action by the Bank as a commercial lender (a) to enforce its rights in connection with a certain loan agreement and guaranty agreements between the Bank and the Obligors, pursuant to which the Bank extended a line of credit loan to BAAS in the original principal amount of $2,500,000.00, as to which the principal sum of $1,645,000.00 (as of September 29, 2025) remains unpaid and due; and (b) to enforce the Bank's rights in connection with a certain security agreement between the Bank and BAAS, pursuant to which BAAS granted the Bank security interests in all of its assets, including without limitation, accounts, equipment, goods, inventory, general intangibles and equipment.

## FACTUAL ALLEGATIONS

### The Loan

7.   On or about October 31, 2023, the Bank and BAAS entered into a certain Master Credit Agreement (as amended, supplemented, restated, extended and/or renewed, the "**Loan**

2

*Agreement*"), which provided that the Bank would extend a certain credit facility or credit facilities to BAAS. (A true and correct copy of the Loan Agreement is attached hereto as **Exhibit "1"**).

8. The Loan Agreement specifically designates "the city of New York, borough of Manhattan" as a selected venue (a "***Selected Venue***") for any action or suit arising out of or relating to any of the Loan Documents (defined below). (*See* Exh. 1, § 6.21).

9. The Loan Agreement further provides that if "the Bank does commence an action or suit arising out of or relating to any [of the Loan Documents], each Obligor agrees that the case may be filed in the Selected Venues" and each "Obligor consents to personal jurisdiction and venue in such forum selected by the Bank and waives any right to contest jurisdiction and venue and the convenience of such forum." (*See* Exh. 1, § 6.21).

10. Pursuant to the Loan Agreement, and as evidenced by a certain note dated October 31, 2023 (the "***Note***"), the Bank extended to BAAS a revolving line of credit loan with a credit limit in the amount of $2,500,000.00 (the "***Loan***"), until October 31, 2024 (the "***Expiration Date***"), at which time BAAS would repay all of the principal, interest and other charges due thereunder. (A true and correct copy of the Note is attached hereto as **Exhibit "2"**).

11. The Loan Agreement provides, *inter alia*, that an event of default will occur thereunder if "[a]ny Obligor fails to make a payment of principal under any Note when due or any Obligor fails to make a payment of any interest, fees or other Obligations when due and such failure continues for three (3) days." (*See* Exh. 1, § 5.1(a)).

12. The Loan Agreement provides, *inter alia*, that in the event of a default thereunder, the Bank would be entitled to "stop making any additional credit available to the Borrower, or require the Borrower to repay its entire debt immediately." (*See* Exh. 1, § 5.2).

13. Pursuant to the Note, upon the occurrence of any default thereunder, the Bank, at

3

its option, may charge interest at the default rate of six (6.0) percentage points higher than the rate of interest otherwise provided in the Note. (*See* Exh. 2, § 3.4).

14. As collateral security for all obligations arising under the Loan, the Note, and any other loan documents, agreements or other instruments relating to the Loan (the "***Obligations***"), Borrower executed a certain Guaranty and Collateral Agreement dated as of October 31, 2023 (as at any time amended, the "***Guaranty and Security Agreement***"). (A true and correct copy of the Guaranty and Security Agreement is annexed hereto as **Exhibit "3"**).

15. Pursuant to the terms of the Guaranty and Collateral Agreement, Borrower granted to the Bank a security interest in the following described property (collectively, the "***Collateral***"):

> All (a) Accounts; (b) Chattel Paper; (c) Deposit Accounts; (d) Documents; (e) General Intangibles; (f) Goods, including Equipment; (g) Instruments; (h) Inventory; (i) Investment Property; (j) Letters of Credit and Letter-of-Credit Rights; (k) Money and other assets of such Obligor that now or later come into the possession, custody, or control of the Bank; (l) all negotiable and nonnegotiable documents of title covering any of the foregoing; (m) all Accessions, attachments and other additions to, or substitutions and replacements for, the foregoing, and all tools, parts and equipment used in connection with the foregoing; (n) all books and records relating to the foregoing whether in the form of a writing, photograph, microfilm or electronic media, including but not limited to any computer-readable memory and any computer software necessary to process such memory; and (o) all proceeds (as such term is defined in the Uniform Commercial Code), all cash or non-cash proceeds (including insurance proceeds), products, rents and profits of the foregoing, and all income, benefits and property receivable on account of the foregoing, and all Supporting Obligations covering an of the foregoing.

(*See* Exh. 3, § 3).

16. As additional security for the repayment of the Indebtedness FinLink executed the Guaranty and Security Agreement as a guarantor, unconditionally guarantying the prompt payment and performance of the Loan Obligations and other agreements of Borrower to Bank. (*See* Exh. 3, § 2.1).

17. Pursuant to the terms of the Guaranty and Security Agreement, FinLink waived certain rights and defenses, which include, without limitation, any right to require the Bank to proceed against Borrower, or to proceed against or exhaust any security for the indebtedness of Borrower, or to pursue any other remedy in the Bank's power whatsoever, or to raise any defense based on any claim that the guarantors' obligations exceed or are more burdensome than those of Borrower. (*See* Exh. 3, § 2.1).

18. The Guaranty and Security Agreement further provides that:

> "**BY SIGNING BELOW, EACH GUARANTOR … CONSENTS TO, JOINS IN AND AGREES TO BE BOUND BY THE RELATED NOTE, THE MASTER CREDIT AGREEMENT AND THE COVENANT AGREEMENT….**" (*See* Exh. 3, § 2).

19. In connection with the Loan Agreement, Borrower executed a certain Financial Covenant Agreement (the "***Covenant Agreement***"), pursuant to which Borrower agreed to certain financial covenants. (A true and correct copy of the Covenant Agreement is attached hereto as **Exhibit "4"**).

20. The Loan Agreement, Note, Guaranty and Security Agreement, Covenant Agreement and other documents related to and/or arising from the Loan shall be collectively referred to herein as the "***Loan Documents***." The Bank is the present holder of the Loan Documents.

**The Defaults Under the Loan Documents**.

21. By letter dated November 22, 2024 (the "***11.22.24 Default Notice***"), the Bank notified the Obligors that the Loan had expired and matured by its own terms on October 31, 2024, but the Obligors failed to pay all amounts due thereunder. (A true and correct copy of the 11.22.24 Default Notice is annexed hereto as **Exhibit "5"**).

22. The failure to repay the Loan at maturity constitutes an event of default under Section 5.1(a) (Failure to Pay.) of the Loan Agreement (the "***Event of Default***").

23. In the 11.22.24 Default Notice, the Bank also noted that as a result of the occurrence of the Event of Default, effective as of December 16, 2024, the Bank invoked its right to collect interest at the default rate of six percent (6%) over the contract rate of interest currently in effect.

24. By letter dated February 12, 2025 (the "***02.12.25 Default Notice***"), among other things, counsel for the Bank referenced the 11.22.24 Default Notice and demanded payment in full by the Obligors of all outstanding sums due in connection with the matured Loan by no later than February 28, 2025, and if payment in full was not made by that time, demanded that Borrower comply with the terms of the Guaranty and Collateral Agreement, and assemble and turnover the Collateral to the Bank. (A true and correct copy of the 02.12.25 Default Notice is annexed hereto as **Exhibit "6"**).

25. Notwithstanding the demands in the 2.12.25 Default Notice, the Obligors did not repay the Loan in full and failed and refused to turn over the Collateral.

26. Without waiving any of its rights or remedies with respect to any defaults under the Loan Documents, including the Event of Default, the Bank entered into a Forbearance Agreement with the Obligors dated as of May 12, 2025 (the "***First Forbearance***"). (A true and correct copy of the First Forbearance is attached hereto as **Exhibit "7"**).

27. The Obligors failed to comply with the terms of the First Forbearance, which terminated pursuant to its terms on June 30, 2025.

28. At request of the Obligors, and without waiving any of its rights or remedies with respect to any defaults under the Loan Documents, including the Event of Default, the Bank entered into a Second Forbearance Agreement with the Obligors dated as of July 23, 2025 (the "***Second Forbearance***"). (A true and correct copy of the Second Forbearance is attached hereto as **Exhibit "8"**).

6

29. The Obligors failed to comply with the terms of the Second Forbearance, which terminated pursuant to its terms on August 15, 2025.

30. Without waiving any of its rights or remedies with respect to any defaults under the Loan Documents, including the Event of Default, the Bank entered into a Third Forbearance Agreement with the Obligors dated as of September 9, 2025 (the "*Third Forbearance*"). (A true and correct copy of the Third Forbearance is attached hereto as **Exhibit "9"**).

31. The Obligors failed to comply with the terms of the Third Forbearance, which required an initial payment of $250,000.00 by September 12, 2025. The payment was not received by the Bank.

32. To date, the Obligors have not repaid the Loan in full and have failed and refused to turn over the Collateral.

33. There is due and owing to the Bank, Loan Obligations comprised of (a) the principal sum of $1,645,000.00 (as of September 29, 2025), (b) all contract interest that has accrued and not been paid, (c) all default interest that has accrued and not been paid, (d) all attorneys' fees and costs that have accrued and not been paid, and (e) all other fees and charges due and payable to the Bank pursuant to the Loan Documents and any related agreements that have accrued and not been paid.

34. Despite written notice and demand for payment of the sums due to the Bank pursuant to the Loan Documents, none of the Obligors have paid the outstanding Loan Obligations to the Bank.

## FIRST CLAIM
### *(Breach of Contract - Loan)*

35. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

36. As set forth above, Borrower defaulted under the terms of the Loan Agreement.

37. As a result of the Event of Default, the Bank is entitled to immediate payment in full of all sums due under the Loan Documents in connection with the Loan.

38. The Bank has performed all of its obligations under the Loan Documents.

39. The Loan Agreement provides that in the event of a default thereunder, Borrower would be liable for all legal fees, costs and expenses incurred by the Bank in connection with the enforcement of its remedies against Borrower. (*See* Exh.1, § 6.6).

40. There is due and owing to the Bank pursuant to the Loan Agreement and other Loan Documents the principal sum of $1,645,000.00 (as of September 29, 2025), plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

41. Accordingly, the Bank is entitled to a money judgment against BAAS in the principal sum of $1,645,000.00 (as of September 29, 2025), plus accrued and accruing interest, default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank under the Loan Documents.

## SECOND CLAIM
*(Foreclosure of Security Interest)*

42. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

43. As a result of the Event of Default, the Bank is entitled to, *inter alia*: (a) take possession of the Collateral; (b) require Borrower to assemble the Collateral and make same available to the Bank at a place designated by the Bank; and/or, (c) dispose of the Collateral by selling or leasing same, and apply the proceeds thereof to the Obligations of Borrower to the Bank under the Loan Documents. (*See* Exh. 1, § 5.2).

44. Accordingly, the Bank is entitled to a judgment foreclosing upon its security interest in the Collateral, awarding to the Bank immediate possession of the Collateral, and permitting the Bank to dispose of same and apply the proceeds thereof to the Obligations and liabilities of Borrower in accordance with Article Nine of the Uniform Commercial Code.

### THIRD CLAIM
*(Replevin)*

45. The Bank refers to and re-alleges each of the foregoing allegations of this Complaint as it more fully set forth herein.

46. As set forth above, Borrower defaulted under the Loan Agreement.

47. Pursuant to the terms of the Loan Agreement, upon the occurrence of an event of default thereunder, the Bank would be entitled to, *inter alia*, take possession of the Collateral. (*See* Exh. 1, § 5.2).

48. Upon information and belief, the Collateral is situated at the premises of and is in the possession of Borrower at its business location in Bothell, Washington.

49. Borrower has failed and refused to return the Collateral to the Bank, as required under the Loan Agreement, and has illegally continued to maintain possession of same.

50. The items subject to replevin are more specifically described as the Collateral.

51. Accordingly, the Bank is entitled to a judgment of possession of the Collateral against Borrower.

### FOURTH CLAIM
*(Conversion)*

52. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

53. As set forth above, Borrower has defaulted under the Loan Agreement, has failed

to make payment to the Bank of the sums due to it, and has refused, and continues to refuse, to deliver possession of the Collateral to the Bank.

54. Upon information and belief, Borrower has continued to use the Collateral in its business despite the Event of Default, despite its obligation to return the Collateral and the Bank's prior demand for turnover of the Collateral, and despite the Obligors' failure to make payment to the Bank therefor.

55. The Collateral has been intentionally and wrongfully converted and detained by Borrower.

56. As a result of the failure of Borrower to surrender the Collateral and its continued illegal usage and wrongful conversion of the Collateral, the Bank has suffered damages in an amount to be determined at trial.

57. Accordingly, the Bank is entitled to a judgment requiring Borrower to surrender the Collateral and to a money judgment against the Borrower in an amount to be determined at trial.

**FIFTH CLAIM**
*(Unjust Enrichment)*

58. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

59. Upon information and belief, Borrower continued to use the Collateral in its businesses despite the Event of Default and its lack of any right to possess or use same.

60. Upon information and belief, Borrower has realized revenues from its illegal possession and use of the Collateral, and has been unjustly enriched in the amount of the value of the Collateral and any income Borrower realized or received due to its illegal possession of same.

61. Accordingly, the Bank is entitled to a money judgment against Borrower in an amount to be determined at trial.

## SIXTH CLAIM
### *(Breach of Guaranty and Security Agreement)*

62. The Bank refers to and re-alleges each of the foregoing allegations of this Verified Complaint as if more fully set forth herein.

63. As set forth above, Borrower has defaulted under the Loan Documents.

64. As a result of Borrower's default under the Loan Documents, FinLink is liable to the Bank for the Loan Obligations pursuant to the terms of the Guaranty and Security Agreement, but has failed to make payment to the Bank therefor.

65. The Bank reasonably relied upon FinLink's Guaranty and Security Agreement in advancing sums to Borrower pursuant to the Loan Documents.

66. The Bank has performed all terms and conditions precedent on its part to be performed pursuant to the terms of the Guaranty and Security Agreement.

67. There is due and owing to the Bank from FinLink pursuant to its Guaranty and Security Agreement, the principal sum of $1,645,000.00 (as of September 29, 2025), plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Loan.

68. Accordingly, the Bank is entitled to a money judgment against FinLink in the principal sum of $1,645,000.00 (as of September 29, 2025), plus accrued and accruing interest and default rate interest, late charges, contractual costs, attorneys' fees and all other charges due to the Bank related to the Loan.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Bank of America, N.A. prays that the Court enter judgment as follows:

A. For entry of judgment against BAAS on the Loan Documents in the amount

11

established by the Bank;

B.    For entry of judgment against BAAS foreclosing upon the Bank's security interest in the Collateral, awarding to the Bank immediate possession of the Collateral, and permitting the Bank to dispose of same and apply the proceeds thereof to the Obligations and liabilities of BAAS;

C.    For entry of judgment holding BAAS liable for its unlawful conduct, including but not limited to its wrongful conversion and detention of the Collateral and its unjust enrichment from the use of the Collateral;

D.    For entry of judgment against FinLink on the Loan Agreement, Note, Covenant Agreement and the Guaranty and Security Agreement in the amount established by the Bank;

E.    For interest and default interest in accordance with the Loan Agreement and the Note;

F.    For reasonable attorneys' fees and costs to the fullest extent available under law; and

G.    For such other and further relief as this Court deems just, proper, and equitable.

Dated: New York, New York
September 29, 2025

Respectfully submitted,
CHAPMAN AND CUTLER LLP

By: /s/ *Michael A. Samuels, Esq.*
Michael A. Samuels, Esq.
Daniel F. Flores, Esq.
1270 Avenue of the Americas, 30th Fl.
New York, New York 10020-1708
Tel: (212) 655-6000
msamuels@chapman.com
dflores@chapman.com

*Attorneys for Plaintiff Bank of America, N.A.*

## VERIFYING AFFIDAVIT

STATE OF CALIFORNIA ) 
                                ) ss. 
COUNTY OF Los Angeles )

SHIRLEY A. YOO, of full age, declares as follows:

1. I am a Senior Vice President and SAG Portfolio Manager for Bank of America, N.A. (the "**Bank**"), plaintiff in this action. I am in charge of the loans to BAAS Corporation and fully familiar with the facts of this case, and I am authorized to execute this Verification on behalf of the Bank.

2. I have read the foregoing Verified Complaint and all the allegations contained therein. Except as to allegations alleged upon information and belief, which allegations I believe to be true, all the allegations in the Verified Complaint are true based on my personal knowledge, from public records, the records of the Bank or information provided to the Bank by owners, employees and agents of BAAS Corporation and/or FinLink, Inc.

_____  
                                                                                              SHIRLEY A. YOO

Sworn and subscribed to before me this 29th day of September, 2025

_____  
NOTARY PUBLIC

CAROLINE MIRZOIAN  
COMM.# 2430798  
NOTARY PUBLIC - CALIFORNIA  
LOS ANGELES COUNTY  
My Comm. Expires Dec. 14, 2026

13